UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JOSHUA BAILEY,

    Applicant,

v.                                                             CASE NO. 8:13-cv-3042-T-23JSS

SECRETARY, Department of Corrections,

    Respondent.
_____/

## **O R D E R**

Bailey applies under 28 U.S.C. § 2254 for the writ of habeas corpus (Doc. 1) and challenges the validity of his state conviction for first degree murder, for which he serves life imprisonment. The respondent correctly argues that the application is time-barred and supports the argument with numerous exhibits ("Respondent's Exhibit __"). (Doc. 10) Bailey admits the application's untimeliness but asserts entitlement both to equitable tolling of the limitation and to the actual innocence exception to the limitation. Because he proves insufficient tolling for the former and no entitlement to the latter, Bailey is not entitled to a review on the merits.

### **UNTIMELINESS**

The Anti-Terrorism and Effective Death Penalty Act creates a limitation for a Section 2254 application for the writ of habeas corpus. "A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody

pursuant to the judgment of a State court. The limitation period shall run from the latest of . . . the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review . . . ." 28 U.S.C. § 2244(d)(1)(A). Additionally, under 28 U.S.C. § 2244(d)(2), "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection."

Bailey's conviction was final on May 22, 2002,[1] and the limitation expired one year later, absent tolling for a state post-conviction proceeding. Bailey let 268 days elapse before on February 19, 2002, he filed a petition for the writ of habeas corpus under state Rule 9.141(d), Florida Rules of Criminal Procedure, in which he alleged that appellate counsel rendered ineffective assistance. (Respondent's Exhibit G) Tolling continued until September 20, 2002, when the district court denied the petition. (Respondent's Exhibit I) Bailey had 97 days remaining (365 − 268 = 97). Consequently, Bailey's federal one-year deadline was December 26, 2002 (September 20 + 97 days = December 26, 2002). Bailey filed his federal application nearly eleven years later on December 3, 2013. (Doc. 1)

Although in 2004 Bailey was permitted leave for a belated motion for post-conviction relief under Rule 3.850, Florida Rules of Criminal Procedure, the motion

---

[1] Bailey's direct appeal concluded on February 21, 2002. (Respondent's Exhibit F) The conviction became final after ninety days, the time allowed for petitioning for the writ of *certiorari*. 28 U.S.C. § 2244(d)(1)(A). *See Bond v. Moore*, 309 F.3d 770 (11th Cir. 2002), and *Jackson v. Sec'y, Dep't Corr.*, 292 F.3d 1347 (11th Cir. 2002).

- 2 -

afforded Bailey no tolling because, as shown above, the limitation expired more than a year earlier. "[A] properly and timely filed petition in state court only tolls the time remaining within the federal limitation period." *Tinker v. Moore*, 255 F.3d 1331, 1335 n.4 (11th Cir. 2001), *cert. denied*, 534 U.S. 1144 (2002). Because the federal one-year period had already expired, no federal limitation remained to toll to allow Bailey to file a federal action. To overcome the admitted untimeliness, Bailey asserts entitlement to equitable tolling of the limitation and to the actual innocence exception to the limitation.

### EQUITABLE TOLLING

The one-year limitation established in Section 2244(d) is not jurisdictional and, as a consequence, "is subject to equitable tolling in appropriate cases." *Holland v. Florida*, 560 U.S. 631, 645 (2010). "Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005). *See Jones v. United States*, 304 F.3d 1035, 1040 (11th Cir. 2002), *cert. denied*, 538 U.S. 947 (2003). Bailey must meet both requirements, and he controls the first requirement — due diligence — but not the second requirement — extraordinary circumstances. The failure to meet either requirement precludes equitable tolling. "The diligence required for equitable tolling purposes is 'reasonable diligence,' not 'maximum feasible diligence,'" *Holland*, 560 U.S. at 653 (internal quotations and citations omitted), and an applicant's "lack

of diligence precludes equity's operation." 544 U.S. at 419. To satisfy the second requirement, Bailey must show extraordinary circumstances both beyond his control and unavoidable even with diligence. *Sandvik v. United States*, 177 F.3d 1269, 1271 (11th Cir. 1999). See cases collected in *Harper v. Ercole*, 648 F.3d 132, 137 (2nd Cir. 2011) ("To secure equitable tolling, it is not enough for a party to show that he experienced extraordinary circumstances. He must further demonstrate that those circumstances caused him to miss the original filing deadline."). Bailey's asserted entitlement to equitable tolling is based on attorney abandonment.

**Facts**

Bailey's family arguably hired Alex Stavrou, Esq., to move for post-conviction relief under state Rule 3.850 to challenge Bailey's murder conviction. The parents never met with Mr. Stavrou but worked exclusively with a paralegal who claimed to represent Mr. Stavrou and who had previously performed contract work for Mr. Stavrou. The paralegal prepared and signed a contract for legal representation and received an initial payment of $7,500 from Bailey's parents. With the assistance of his wife (who was a real estate broker and mortgage broker), the paralegal later arranged for Bailey's parents to receive a mortgage on their home so that they could remit additional monies toward the attorney fees. Over the ensuing months the paralegal assured Bailey and his parents that a post-conviction motion was in preparation, showed them a draft of the motion, and represented that the federal limitation had been tolled. When not meeting the paralegal in person, Bailey's parents spoke with the paralegal by calling Mr. Stavrou's office.

Mr. Stavrou represents that he was never aware of the paralegal's actions until February, 2004, at which time he self-reported the circumstances to The Florida Bar. Also, Mr. Stavrou successfully moved the circuit court to grant Bailey leave to file a belated motion under Rule 3.850, but he did not continue to represent Bailey. Contrary to Mr. Stavrou's representation of ignorance until 2004, (1) Bailey was deposed in October, 2002, by the prosecutor for Bailey's co-defendant's trial, (2) Mr. Stavrou was present at the deposition, and (3) Bailey stated that the post-conviction motion was filed by his private counsel. "Q. Private counsel being Mr. Stavrou, who is sitting here today with you? A. That is correct." (Doc. 17-1 at 4) Bailey admitted that he had neither spoken to, nor met with, Mr. Stavrou until the deposition. (Doc. 17-1 at 4)

**First Requirement: Due Diligence**

"The diligence required for equitable tolling purposes is 'reasonable diligence,' not 'maximum feasible diligence.'" *Holland*, 560 U.S. at 653 (citations omitted). As stated in *Downs*, 520 F.3d at 1323 (quoting *Aron v. United States*, 291 F.3d 708, 712 (11th Cir. 2002)) (ellipsis original), "Due diligence . . . does not require a prisoner to undertake repeated exercises in futility or to exhaust every imaginable option, but rather to make reasonable efforts. Moreover, the due diligence inquiry is an individualized one that must take into account the conditions of confinement and the reality of the prison system." Under the above facts, Bailey and his parents acted diligently to hire counsel, paid the paralegal attorneys fees, relied upon the paralegal's representations that a tolling motion was filed, and reasonably believed

that Mr. Stavrou was retained when Stavrou was present and representing Bailey during the deposition. Bailey meets the due diligence requirement. However, as discussed above, equitable tolling requires proof of both "due diligence" and "extraordinary circumstances."

**<u>Second Requirement: Extraordinary Circumstances</u>**

Bailey contends that his retained attorney abandoned him. As *Maples v. Thomas*, 132 S. Ct. 912, 924 (2012), explains, "abandonment" qualifies as an "extraordinary circumstance":

> We agree that, under agency principles, a client cannot be charged with the acts or omissions of an attorney who has abandoned him. Nor can a client be faulted for failing to act on his own behalf when he lacks reason to believe his attorneys of record, in fact, are not representing him. We therefore inquire whether Maples has shown that his attorneys of record abandoned him, thereby supplying the "extraordinary circumstances beyond his control," necessary to lift the state procedural bar to his federal petition.

Whether an attorney's inaction constitutes abandonment necessarily dependents on the facts under review. *Downs v. McNeil*, 520 F.3d 1311 (11th Cir. 2008), explains:

> During the course of representation, counsel's alleged behavior ran the gamut from acts of mere negligence to acts of gross negligence to acts of outright willful deceit. In considering whether the conduct of counsel was extraordinary, we will not dissect the continuing course of conduct in which counsel engaged, but rather view counsel's behavior as a whole. Consequently, although the culminating event which rendered Downs' federal habeas petition untimely was counsel's late filing of the petition, that ordinary act of negligence cannot be isolated from counsel's allegedly egregious misconduct.

*Holland*, 560 U.S. at 651, cites cases in which the "lower courts have specifically held that unprofessional attorney conduct may, in certain circumstances,

prove 'egregious' and can be 'extraordinary'. . . ." *Holland* cites as examples three cases that found attorney abandonment, specifically, *Baldayaque v. United States*, 338 F.3d 145 (2nd Cir. 2003); *Spitsym v. Moore*, 345 F.3d 796 (9th Cir. 2003); and *United States v. Martin*, 408 F.3d 1089 (8th Cir. 2005). Each case, including *Holland*, features egregious attorney misconduct both prejudicial to the client and arguably similar to Mr. Stavrou's inaction, specifically, representing Bailey during a 2002 deposition but accomplishing nothing further until 2004 and failing to supervise a subordinate. In sum, Bailey proves abandonment that meets the "extraordinary circumstance" requirement.

As a consequence, Bailey proves both "due diligence" and "extraordinary circumstances" for entitlement to equitable tolling based on his counsel's abandonment. However, the record shows that the application is untimely even if Bailey is afforded the maximum amount of equitable tolling.

As discussed above, when determining timeliness, Bailey allowed 268 days to elapse after his conviction became final and he tolled the limitation by filing a petition for the writ of habeas corpus in the state district court. Bailey had 97 days remaining of the one-year limitation. Affording him the maximum possible amount of equitable tolling, Bailey's limitation resumed on December 5, 2012, when the mandate issued on his belated motion under Rule 3.850. As a consequence, the limitation expired on March 12, 2013. (December 5, 2012 + 97 days = March 12, 2013) Bailey filed his federal application on December 3, 2013, which is 362 days

after the mandate and nearly nine months late. As a consequence, the application is untimely even though Bailey qualifies for equitable tolling.

## **ACTUAL INNOCENCE**

Bailey asserts entitlement to a review on the merits under the "actual innocence" exception to the federal limitation. Although Bailey can challenge his conviction if he can show that he is "actually innocent" of the offense, actual innocence is not a separate claim that challenges the conviction but a "gateway" through which a defendant can pass to assert an otherwise time-barred or procedurally barred federal claim.[2] Passage through the gateway is difficult to obtain because "[t]o be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence — whether . . . exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence — that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). The gateway is narrow and opens "only when a petition presents 'evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error.'" *McQuiggin, Warden, v. Perkins*, 133 S. Ct. 1924, 1936 (2013) (quoting *Schlup v. Delo* 513 U.S. 298, 316 (1995)).

---

[2] Bailey asserts his actual innocence as a means of escaping the limitation's bar. The Supreme Court has never recognized the existence of a "free standing" claim. *See McQuiggin v. Perkins*, 133 S. Ct. 1924, 1931 (2013) ("We have not resolved whether a prisoner may be entitled to habeas relief based on a freestanding claim of actual innocence.") (citing *Herrera v. Collins*, 506 U.S. 390, 404–05 (1993)).

"'[A]ctual innocence' means factual innocence, not mere legal insufficiency."

*Bousley v. United States*, 523 U.S. 614, 623 (1998). *House v. Bell*, 547 U.S. 518, 538 (2006) (internal citation omitted), explains that the applicant's burden, although demanding, is not absolute proof of innocence:

> [I]t bears repeating that the *Schlup* standard is demanding and permits review only in the "extraordinary" case . . . . At the same time, though, the *Schlup* standard does not require absolute certainty about the petitioner's guilt or innocence. A petitioner's burden at the gateway stage is to demonstrate that more likely than not, in light of the new evidence, no reasonable juror would find him guilty beyond a reasonable doubt — or, to remove the double negative, that more likely than not any reasonable juror would have reasonable doubt.

A sufficient showing of actual innocence can overcome the limitation bar, as *Perkins*, 133 S. Ct. at 1928 (brackets original), explains:

> We hold that actual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar, as it was in *Schlup* and *House,* or, as in this case, expiration of the statute of limitations. We caution, however, that tenable actual-innocence gateway pleas are rare: "[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Schlup,* 513 U.S., at 329, 115 S. Ct. 851; see *House,* 547 U.S., at 538, 126 S. Ct. 2064 (emphasizing that the *Schlup* standard is "demanding" and seldom met). And in making an assessment of the kind *Schlup* envisioned, "the timing of the [petition]" is a factor bearing on the "reliability of th[e] evidence" purporting to show actual innocence. *Schlup,* 513 U.S., at 332, 115 S. Ct. 851.

Bailey admits to having participated in beating the victim, but he denies having drowned the victim. Bailey's asserted actual innocence is that his co-defendant had admitted to another jail detainee that he alone had drowned the

- 9 -

victim. This proposed testimony was the subject of a hearing immediately before trial started, and the trial court rejected the proposed testimony based on a lack of trustworthiness. (Respondent's Exhibit M, vol. III at 6–18) As a consequence, the proposed evidence fails to qualify under the actual innocence exception because the evidence is not "new" but, as was the circumstance in *Perkins*, "the information . . . was 'substantially available . . . at trial.'" *Perkins*, 133 S. Ct. at 1936. As a consequence, Bailey is not entitled to the actual innocence exception to the limitation.

Accordingly, the application for the writ of habeas corpus (Doc. 1) is **DISMISSED AS TIME-BARRED**. The clerk must **CLOSE** this case.

### DENIAL OF BOTH A CERTIFICATE OF APPEALABILITY AND LEAVE TO APPEAL *IN FORMA PAUPERIS*

Bailey is not entitled to a certificate of appealability ("COA"). A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his application. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a COA. Section 2253(c)(2) permits issuing a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." To merit a COA, Bailey must show that reasonable jurists would find debatable both (1) the merits of the underlying claims and (2) the procedural issues he seeks to raise. *See* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 478 (2000); *Eagle v. Linahan*, 279 F.3d 926, 935 (11th Cir 2001). Because the application is clearly time-barred, Bailey

cannot meet *Slack*'s prejudice requirement. 529 U.S. at 484. Finally, because Bailey is not entitled to a COA, he is not entitled to appeal *in forma pauperis*.

Accordingly, a certificate of appealability is **DENIED**. Leave to appeal *in forma pauperis* is **DENIED**. Bailey must pay the full $505 appellate filing fee unless the circuit court allows Bailey to appeal *in forma pauperis*.

ORDERED in Tampa, Florida, on September 29, 2017.

_____
STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE